| | |
|---|---|
| LAW OFFICE OF JEFFREY CAMPOLONGO | ATTORNEY FOR PLAINTIFF |

By: JEFFREY CAMPOLONGO, ESQUIRE
IDENTIFICATION NO: 82608
128 CHESTNUT STREET, SUITE 202
PHILADELPHIA, PA 19106
215.592.9293
215.592.9296 FAX

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
JENNIFER KASE,                      :
240 E. PENN AVENUE                  :
CLEONA, PA 17042                    :       CIVIL ACTION
        PLAINTIFF,                  :
                                    :       NO.:
        v.                          :
                                    :       JURY TRIAL DEMANDED
UNITED PARCEL SERVICE ("UPS"),      :
15 E. OREGON AVENUE                 :
PHILADELPHIA, PA 19148              :
        DEFENDANT.                  :
_____     :
```

### COMPLAINT

**I.  INTRODUCTION**

Plaintiff, Jennifer Kase, is an adult, individual who alleges through her counsel, the Law Office of Jeffrey Campolongo, that her rights to be free from discrimination under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. and the Rehabilitation Act, 29 U.S.C. § 701 et seq., have been violated and avers as follows:

Plaintiff brings this action against UPS for discrimination in employment, by: (a) maintaining a de facto policy, pattern and practice of requiring employees to provide a "full" or "100%" medical release, without restrictions, before permitting them to return to duty following a medical leave of absence; (b) failing and/or refusing to engage in the required interactive process, and/or refusing to engage in the interactive process in good faith, to

identify reasonable accommodations for those employees who attempt to return to work following an absence due to medical treatment or a medical condition, as required under the ADA; (c) failing and refusing to reinstate permanently disabled employees in a position that will effectively accommodate their medical restrictions without imposing an undue hardship on UPS; and (d) failing and refusing to permit employees who have filed workers compensation and/or disability discrimination claims from returning to work, in retaliation for having exercised their rights to seek workers compensation, and/or the protection of the federal civil rights statutes.

## II.   PARTIES

1.   Plaintiff, Jennifer Kase, is a female who resides at the above captioned address.

2.   At all times material hereto, Plaintiff was an employee with United Parcel Service (hereinafter referred to as "Defendant UPS").

3.   Defendant UPS is a Delaware corporation, having corporate headquarters located at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328.  At all relevant times, UPS has continuously been an employer, a person, and a covered entity within the meaning of 42 U.S.C. § 12111 (2), (5) and (7).

4.   Defendant UPS is an entity engaged in an industry or activity affecting commerce which employs 15 or more employees in all of its offices, pursuant to 42 U.S.C. § 12111 (5)(A).

## III.   JURISDICTION and VENUE

5.   Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

6.   Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331.  This action is authorized and

instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. § 1201 *et seq*.

7. Plaintiff exhausted her administrative remedies when Plaintiff submitted a verified charge to the EEOC (Charge No. 170200500153) on or about October 15, 2004.

8. On or about October 5, 2006, the EEOC made a determination that Charge No. 170200500153 established a violation of the ADA.

9. On or about October 13, 2007 Plaintiff received her "Notice of Right to Sue" from the EEOC for her federal ADA claims against Defendant UPS (Charge No. 170200500153).

10. This Court has personal jurisdiction over defendant because the Company systematically and continuously engages in substantial interstate commercial conduct and business activity in Pennsylvania, and the case arises out of UPS's unlawful conduct within this Commonwealth.

11. Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania inasmuch as Defendant UPS regularly conducts business within this District.

**IV.** **FACTS**

12. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

13. Plaintiff was hired by Defendant UPS in 1987 as a part-time clerk and in 1990 became a full-time Customer Service Representative.

14. In 1998 Plaintiff became a Damage Recovery Specialist and in 2000 she took the position of Security Recovery Supervisor.

15. Plaintiff is in a protected class because she is a qualified individual with a disability in that she suffers from Major Depression and other related conditions, and is substantially limited in performing several major life activities.

16. Plaintiff is also a qualified individual with a disability in that she has a record of impairment and/or perceived disability.

17. In 2002 Plaintiff took an extended medical leave of absence for two months because of her depression.

18. In May 2004 Plaintiff was again forced to take a medical leave of absence when her work conditions exacerbated her depression.

19. From May 2004 to the end of June 2004 Plaintiff's doctor, Dr. Charles E. Cladel, Jr. submitted numerous letters on Plaintiff's behalf to Defendant UPS and/or its agent Broadspire regarding Plaintiff's medical progress and her inability to return to work.

20. In August 2004, Plaintiff received a letter from Defendant UPS which was dated July 13, 2004, denying her disability benefits and advising:

    > At this juncture, you have two options: (1) return to your normal work duties, with documentation from your doctor that you are now able to perform your job without restrictions. (2) Submit sufficient information to Broadspire Ins Co to justify your inability to work your regular job through the appeals process.

21. On or about July 19, 2004, Dr. Cladel wrote a letter to Defendant UPS indicating that Plaintiff could return to work at that time.

22. On or about July 19, 2004, Plaintiff was evaluated by a physician at Defendant's request who determined that she was not fit to return to work at that time.

23. In or around the beginning of August 2004 Plaintiff had a conversation with her supervisor, Tom Wolfe, wherein she discussed returning to work with restrictions or modifications. Mr. Wolfe directed her to speak to someone in Human Resources. Plaintiff spoke to Bill Gaskins in Human Resources who told her that he was not aware of accommodations ever being made for anyone and he believed it was against UPS policy to do so.

24. On August 23, 2004, Plaintiff's psychologist, Dr. John Hower, sent a letter to

       Defendant UPS's administrator for short-term disability benefits, Broadspire, on Plaintiff's behalf requesting reasonable accommodations for Plaintiff due to her disability.

25. Specifically, the requested accommodations included modified hours, less travel, a modified work area within Harrisburg, remaining in the Department of Damage Recovery, a more structured work schedule and the ability to leave work for scheduled doctor's appointments when necessary.

26. On or about September 6, 2004, Plaintiff sent an email to Defendant UPS which was addressed to Tom/Bob requesting reasonable accommodations. After Plaintiff's September 6, 2004 request for accommodations, short-term disability benefits were discontinued by Defendant UPS through its agent Broadspire.

27. In a document dated March 8, 2005 denying Plaintiff's short-term disability appeal, Defendant UPS reported Plaintiff's separation date as September 19, 2004.

28. Defendant UPS informed Plaintiff of its March 8, 2005 decision denying her short-term disability appeal on March 24, 2005.

29. In February 2005, nearly six (6) months after Plaintiff's initial request for reasonable accommodation was submitted, Defendant UPS responded by declaring that Plaintiff was not disabled.

30. At all times material hereto, Plaintiff was capable of performing all of the essential functions of her position in the Department of Damage Recovery.

31. There is no medical or factual support for not permitting Plaintiff to return to work with reasonable accommodations.

**V.       SUMMARY OF LEGAL ALLEGATIONS**

32. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

33. Plaintiff is in a protected class because she is a qualified individual with a disability within the meaning of the disability statutes insofar as she has a physical impairment that substantially limits one or more of her major life activities; a record of a physical impairment; and/or has been regarded as having such an impairment.

34. Plaintiff's disability, at all times material hereto, did not prevent her from performing the essential functions of her job.

35. At all material times Defendant knew, or should have known, of Plaintiff's need for reasonable accommodation due to her disability, Major Depression.

36. Plaintiff requested workplace modifications as a form of reasonable accommodation.

37. Defendant failed to accommodate Plaintiff including, but not limited to, refusing to consider any of Plaintiff's aforementioned requests for accommodations, or engaging in the interactive process to determine whether allowing Plaintiff's requested accommodations would impose an undue hardship.

38. Plaintiff engaged in protected activity under the ADA when she requested reasonable accommodations for her disability not later than September 6, 2004 and on numerous occasions thereafter.

39. On or about September 19, 2004, Plaintiff was separated from her employment with Defendant due to the continuous discrimination, harassment, and retaliation she endured for engaging in protected activity.

40. Plaintiff believes and avers that this continuous discrimination and harassment based on her disability amounted to wrongful termination by Defendant UPS.

41. Plaintiff suffered adverse employment actions in the form of wrongful termination and denied accommodations as a result of engaging in protected activity and/or in retaliation for complaining of unlawful discrimination.

42. Defendant UPS is one of the world's largest private mail carriers with hundreds of thousands of employees worldwide, including over 70,000 package truck drivers in the United States alone. When a UPS employee attempts to return to work following an accident or a medical leave of absence and notifies the Company of such intention, UPS requires as a routine policy and practice that such employee obtain a 100% full medical release prior to any reinstatement with the Company. UPS in fact does have positions available within the company which could accommodate Plaintiff. In the absence of the submission of a full medical release, medically restricted employees may be allowed to temporarily work in the Company's "light-duty" ("TAW") program, which is less physically challenging and may comport with their restrictions and capabilities. However, the TAW program is only rehabilitative in nature and, in fact, injured and medically restricted employees who have a limited prospect of full recovery (i.e., those whose restrictions are expected to persist for more than thirty (30) days) are ineligible to participate in the TAW program.

43. Defendant UPS not only denies permanently disabled employees engagement in the interactive process to determine a reasonable accommodation for them as mandated under the ADA, but, as a de facto policy, pattern and practice, denies permanently disabled and/or permanently restricted employees access to other less physically demanding work on a permanent basis within the Company. This policy, pattern and practice of non-interaction, bad faith, non-accommodation and retaliation by UPS on the basis of disability status constitutes a *per se* violation of the ADA. UPS arbitrarily and unilaterally denominates such permanently disabled employees who

attempt to return to work from medical leave without a full medical release as "inactive" employees, as a pretext for violating their rights, and routinely refuses to engage them in the interactive process and denies them reasonable accommodations in violation of the ADA.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT,**
**42 U.S.C. § 12101 *et seq*.**
**Disability Discrimination, Wrongful Termination and Retaliation**

44. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

45. Defendant's refusal to accommodate Plaintiff is in violation of the ADA.

46. Defendant has intentionally discriminated against Plaintiff because of her disability by retaliating against her and by terminating her employment.

47. As a result of the unlawful policy, pattern and practice, and unlawful conduct of Defendant UPS as described herein, Plaintiff suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, emotional distress, and reasonable attorney's fees, the exact amount of which will be determined at trial.

48. As a further direct and proximate result of the Defendant's violation of the ADA as heretofore described, Plaintiff has been compelled to retain the services of counsel in prosecuting this action. Pursuant to the ADA, Plaintiff is entitled to an award of her counsel fees.

49. The outrageous conduct of the Defendant, through its supervisors, managers, agents and employees, in participating in acts of discrimination against the Plaintiff, was done with willful indifference to the Plaintiff's federally protected rights, and with

the intent, design and purpose of injuring her. Therefore, Plaintiff is entitled to punitive damages.

50. As a direct and proximate result of Defendant's employment discrimination, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, which have caused her extreme humiliation, emotional distress and frustration.

### COUNT II
### PENNSYLVANIA HUMAN RELATIONS ACT,
### 43 P.S. § 951 *et seq.*
### Disability Discrimination, Wrongful Termination and Retaliation

51. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

52. Defendant's refusal to accommodate Plaintiff is in violation of the PHRA.

53. Defendant has intentionally discriminated against Plaintiff because of her disability by retaliating against her and by terminating her employment.

54. As a result of the unlawful policy, pattern and practice, and unlawful conduct of Defendant UPS as described herein, Plaintiff suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, emotional distress, and reasonable attorney's fees, the exact amount of which will be determined at trial.

55. As a further direct and proximate result of the Defendant's violation of the PHRA as heretofore described, Plaintiff has been compelled to retain the services of counsel in prosecuting this action. Pursuant to the PHRA, Plaintiff is entitled to an award of her counsel fees.

56. As a direct and proximate result of Defendant's employment discrimination, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free

...
...

from discrimination, which have caused her extreme humiliation, emotional distress and frustration.

## COUNT III
## REHABILITATION ACT,
## 29 U.S.C. § 701 *et seq*.
## Disability Discrimination, Wrongful Termination and Retaliation

57. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

58. Defendant is a federal contractor doing business with the United States government. By virtue of this status, UPS is required to comply with the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, to correct unlawful employment practices on the basis of disability, including the statutory mandate to provide reasonable accommodations to individuals with disabilities. At all times relevant to the factual claims which form the basis for this suit, Defendant has been subject to the requirements of the Rehabilitation Act.

59. The Rehabilitation Act requires the Defendant to engage in an interactive process with the employees, to identify and agree upon either (1) a reasonable accommodation to allow the employee to return to productive employment while performing the essential functions of his or her former job, or (2) another vacant position. The Company's policy requires it to violate its duty to persons seeking accommodations which is to engage in the interactive process required under the ADA and under the Rehabilitation Act. UPS is required by law to engage in the interactive process in order to identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations.

60. Defendant UPS operates "programs and activities" as defined by 29 U.S.C. § 794.

61. Defendant's refusal to accommodate Plaintiff is in violation of the Rehabilitation Act.

62. Defendant has intentionally discriminated against Plaintiff because of her disability by retaliating against her and by terminating her employment.

63. As a result of the unlawful policy, pattern and practice, and unlawful conduct of Defendant UPS as described herein, Plaintiff suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, emotional distress, and reasonable attorney's fees, the exact amount of which will be determined at trial.

64. As a further direct and proximate result of the Defendant's violation of the Rehabilitation Act as heretofore described, Plaintiff has been compelled to retain the services of counsel in prosecuting this action. Pursuant to the Rehabilitation Act, Plaintiff is entitled to an award of his counsel fees.

65. As a direct and proximate result of Defendant's employment discrimination, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, which have caused her extreme humiliation, emotional distress and frustration.

**WHEREFORE**, Plaintiff requests that the Court grant her the following relief against Defendant:

(a) Damages in a sum to exceed $150,000.00 for past and future monetary losses as a result of Defendant's unlawful discrimination;

(b) Compensatory damages;

(c) Punitive damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable Costs;

(g)   Pre and post judgment interest;

(h)   An allowance to compensate for negative tax consequences;

(i)   A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the Rehabilitation Act;

(j)   Order Defendant to institute and implement, and individual Defendants to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities for persons with present, past, or perceived disabilities;

(k)   Order Defendant to make Plaintiff whole by providing appropriate back-pay with prejudgment interest, in amounts to be proved at trial, reinstatement to a position consistent with her physical or mental abilities and restrictions having compensation, responsibility, and duties, commensurate with her education, experience, and skills;

(l)   Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment; and

(m)   Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**LAW OFFICE OF JEFFREY CAMPOLONGO**

January 11, 2008                **By:**   [JC3646 - Validation of Signature Code]
Date                                      Jeffrey Campolongo
                                          Identification No: 82608
                                          128 Chestnut Street, Suite 202
                                          Philadelphia, PA 19106
                                          (215) 592-9293
                                          (215) 592-9296 fax
                                          Counsel for Plaintiff